Larry D. Vaught, Judge, concurring in part and dissenting in part.
I agree with the original panel that we must reverse Williams's residential-burglary conviction because it appears that the circuit court made a legal error by impermissibly considering evidence of an underlying intent with which Williams was never charged. We differ on whether reversal of Williams's residential-burglary conviction requires us to also reverse the court's subsequent revocations of Williams's SIS based on his commission of that new offense. I contend that it does not and dissent from the majority's decision to reverse the revocations. Absent a clearly defined legal basis for reversal, we simply do not have the authority to overturn a circuit court's order when it is supported by sufficient evidence.
In a revocation proceeding, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or probation, and on appellate review, we do not reverse the circuit court's decision unless it is clearly against the preponderance of the evidence. Flemons v. State , 2014 Ark. App. 131, 2014 WL 668205 ; Ark. Code Ann. § 16-93-308(d) (Supp. 2015). We have held numerous times that, "[b]ecause the burdens of proof are different, evidence that may not be sufficient to convict can be sufficient to revoke." Payne v. State , 2017 Ark. App. 265, at 2, 520 S.W.3d 699, 701 ;
*760 Bradley v. State , 347 Ark. 518, 65 S.W.3d 874 (2002). This court will not reverse the circuit court's decision to revoke a suspended sentence unless it is clearly against the preponderance of the evidence. Henderson v. State , 2017 Ark. App. 486, at 2, 2017 WL 4274648.
Revocations based on the commission of a new offense have never depended on the defendant having been convicted or even charged with that new crime. For example, in Turner v. State , 2017 Ark. App. 682, at 4, 537 S.W.3d 299, 301, we affirmed the revocation of Turner's probation based on a new charge of first-degree battery. At the time of revocation, Turner had not yet been convicted of battery, but we found the evidence sufficient to support revocation because, unlike in the context of a criminal trial, "the State must prove its case only by a preponderance of the evidence-more likely than not that the crime occurred." Turner , 2017 Ark. App. 682 at 4, 537 S.W.3d at 301. Conviction is not a prerequisite for revocation, and I reject the premise that reversal of Williams's residential-burglary conviction automatically requires us to reverse the revocations as well. These are separate cases with differing legal standards and should be evaluated independently.
I also note that it is inaccurate to frame Williams's SIS revocations as having been based on his residential-burglary conviction. The revocations of Williams's SIS were based on his commission of the new offense of residential burglary, the testimony and evidence of which the circuit court took into consideration during the revocation proceedings. The court also heard additional testimony from Williams's probation officer and counsels' arguments as to revocation. Were this a case in which the only evidence of Williams's new offense was a certified copy of the official record of conviction, reversal of the conviction would likely mandate reversal of the revocations as well. In this case, however, it is clear that the circuit court carefully considered the substantive evidence presented against Williams, including his victims' testimony and his own video-taped interview, and went so far as to comment during the revocation proceedings on specific pieces of testimony and evidence. Clearly, the revocations did not hinge solely on William's residential-burglary conviction , but instead rested on the wealth of evidence proving that he had committed that new offense.
In that context, pursuant to our well-established standard of review, our task is to decide whether the evidence presented against Williams is sufficient to support the revocation orders. The evidence against Williams was overwhelming: the Lawrences, who knew Williams, testified that after being physically assaulted on their porch by an unknown man, they came into their home to find Williams, who did not have permission to be in the home, standing between their bed and dresser, threatening them with a gun. They then discovered that $300 was missing. Williams admitted in the police interview that he had gone to the Lawrences' home to recover money he had given Mr. Lawrence for a drug deal. There was, therefore, more than sufficient evidence presented to the circuit court to support the revocations of his SIS based on his commission of the new offense of residential burglary.
The majority holds that, in the revocation proceedings, the circuit court "made no findings" that Williams had committed the new offense of residential burglary. I disagree. The State alleged, in its revocation petition, that Williams committed new offenses and presented evidence of such. The court then granted the revocation petitions. We have previously recognized that we may presume that the circuit court *761 acted properly and made findings necessary to support its judgment. Tillery v. Evans , 67 Ark. App. 43, 991 S.W.2d 644 (1999). I am unaware of any legal requirement that the circuit court make oral or written findings in revocation cases beyond the filing of an order of revocation, and the majority cites no precedent for such an obligation. Williams's counsel did not seek clarification or ask for specific findings as to which underlying intent(s) the court was considering, and therefore failed to make a clear and informative record from which we could have potentially determined this issue. Without citing any authority, the majority uses the circuit court's lack of specific findings as a basis for reversal, when we have previously held that "it is the duty of the appellant to make his record, and we must resolve all doubts on behalf of the appellee on appeal." Brown v. Arkoma Coal Corp. , 276 Ark. 322, 326, 634 S.W.2d 390, 392 (1982). I therefore disagree that the court's lack of specific findings provides any basis for reversal, and I reject the contention that, by affirming the revocation orders, we would impermissibly engage in fact-finding as an appellate court. Our charge is to evaluate the sufficiency of the evidence supporting the court's revocation order, Henderson v. State , 2017 Ark. App. 486, at 2, and I see no reason to abstain from that review here.
The "pivotal point," according to the majority, is the assumption that the circuit court must have made the same legal error in the revocation proceedings as it made in the criminal trial (i.e., considering evidence of an underlying intent with which Williams was never charged). Without citation to any authority, the majority bases its reversal on the conclusion that "we have no reason to believe that the circuit court had corrected its earlier error and found that Williams had committed the crime charged." It is undisputed that the circuit court never said anything in the revocation proceedings indicating legal error. The majority is imputing the legal error made in Williams's criminal case, CR-15-3677, to the revocation proceedings in cases CR-10-3907 and CR-13-1218. The majority cites no precedent or legal authority allowing us to reverse on this basis, and I am not aware of any. I believe it is legal error for an appellate court to reverse a circuit court's order that is supported by sufficient evidence and suffers from no verifiable legal flaw or error.